1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
10   ELIGIO R. ORTIZ,                        No. C 06-2834 WHA (PR)

11                    Petitioner,            **ORDER DENYING PETITION
                                             FOR WRIT OF HABEAS
12       vs.                                 CORPUS**

13   ROY A. CASTRO, Warden,

14                    Respondent.
     _____/
15

16          This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.  The court

17   ordered respondent to show cause why the writ should not be granted.  Respondent has filed an

18   answer and a memorandum of points and authorities in support of it, and has lodged exhibits with

19   the court.  For the reasons set forth below the petition is **DENIED**.

20                               **STATEMENT**

21          On September 29, 2000, petitioner, driving a Ford flatbed truck at high speed, crossed the

22   double yellow center line of Highway 29 in the Napa Valley and crashed head-on into a passenger

23   car carrying a family visiting from New Zealand.  *People v. Ortiz*, 109 Cal. App. 4th 104, 106

24   (2003).  Two of the New Zealanders were killed outright, and two were injured seriously.  *Ibid.*

25   Petitioner, driving south, had seen his estranged wife and others in a vehicle headed north, made a

26   U-turn, and pursued them at very high rates of speed; it appears that the dangerous attempt to pass

27   over a double yellow line was his attempt to get around a slower car to catch up with his wife's

28   vehicle.  *Id.* at 107-08.  Petitioner was not under the influence of alcohol or any controlled substance

United States District Court

For the Northern District of California

1   when a highway patrol officer examined him at the hospital.  *Id.* at 108.

2       A jury convicted petitioner of second degree murder with a vehicle.  *See* Cal. Pen. Code 187.

3   He was sentenced to fifteen years to life in state prison.

**DISCUSSION**

4

5   **A.   STANDARD OF REVIEW**

6       A district court may not grant a petition challenging a state conviction or sentence on the

7   basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of

8   the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application

9   of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

10  resulted in a decision that was based on an unreasonable determination of the facts in light of the

11  evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

12  both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S.

13  362, 407-09 (2000), while the second prong applies to decisions based on factual determinations,

14  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

15      A state court decision is "contrary to" Supreme Court authority, that is, falls under the first

16  clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by

17  [the Supreme] Court on a question of law or if the state court decides a case differently than [the

18  Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at

19  412-13.

20  **B.   ISSUES PRESENTED**

21      Petitioner contends that he was denied effective assistance of counsel when his appellate

22  counsel failed to raise as issues on appeal (1) the trial court's denial of special instructions requested

23  by the defense and (2) error in denial of a pretrial motion to dismiss the information.

24      The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

25  effective assistance of counsel on his or her first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387,

26  391-405 (1985).  Although the right to the effective assistance of counsel at trial is guaranteed to

27  state criminal defendants by the Sixth Amendment as applied to the states through the Fourteenth,

28  *Lucey*, 469 U.S. at 392, the Sixth Amendment does not address a defendant's rights on appeal; the

*United States District Court*
For the Northern District of California

2

1   right to effective state appellate counsel is derived purely from the Fourteenth Amendment's due

2   process guarantee, *id.* Claims of ineffective assistance of appellate counsel are reviewed according

3   to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d

4   1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's advice fell below an

5   objective standard of reasonableness and that there is a reasonable probability that, but for counsel's

6   unprofessional errors, he would have prevailed on appeal. *id.* at 1434 & n.9 (citing *Strickland*, 466

7   U.S. at 688, 694). It is important to note that appellate counsel does not have a constitutional duty to

8   raise every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54

9   (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective

10  appellate advocacy. *Miller*, 882 F.2d at 1434. Appellate counsel therefore will frequently remain

11  above an objective standard of competence and have caused his client no prejudice for the same

12  reason – because counsel declined to raise a weak issue. *Id.*

13       **1.**   **INSTRUCTIONS**

14       Petitioner claims that his appellate counsel was ineffective because he failed to raise on

15  appeal issues concerning the definition of implied malice. The court instructed the jury that in order

16  to convict the defendant of murder, "each of the following elements must be proved. There are three

17  of them. One, a human being was killed. Two, the killing was unlawful. And, three, the killing was

18  done with malice aforethought." The court then gave CALJIC 8.11 without change:

19       Malice may be either expressed or implied, and in this case, we are dealing with
        implied malice, not expressed malice. Malice is implied when the killing resulted

20       from an intentional act, the natural consequences of the act are dangerous to human
        life, and the act was deliberately performed with knowledge of the danger to and with

21       conscious disregard for human life.

22  (Exh. K, Tr. 2009-10).

23       Petitioner argues that there was an appealable error in the court's denial of modifications to

24  CALJIC 8.11 he proposed. Counsel asked the trial court to (a) instruct the jury that in order to find

25  defendant guilty of murder in the second degree, the intentional act that resulted in the killing "must

26  have been done with a base, antisocial motive;" (b) instruct the jury that the word "disregard" means

27  a lack of attention that is "intentional" or "willful;" (c) instruct the jury that in addition to the three

28  elements of implied malice it described, the jury must find that "Defendant was aware of the danger

to an actual person or persons at the time such an act was committed;" and (d) in the "natural consequences" element, add a requirement that there be "a High Probability that the act would result in death."  (Exh. J at 376-408; Exh. K at 1950-57).

With respect to each of these allegations, defendant argues that the jury would not have found the requisite "mens rea" for murder, as distinguished from manslaughter, if the alterations had been made.  For the reasons discussed below, however, the trial court did not commit reversible error under California law by refusing to give any of the proposed changes, so appellate counsel could not have been ineffective in failing to raise them.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel not ineffective for failing to raise a meritless issue).  Appellate counsel therefore both remained above an objective standard of competence and caused his client no prejudice for the same reason – because counsel declined to raise weak issues.  *See Miller*, 882 F.2d at 1434.

### (a)    "Base, Antisocial Motive"

Petitioner claims appellate counsel was ineffective in not contending on appeal that the trial court should have accepted defense counsel's request that the court add this language to CALJIC 2.51: "In order to find defendant guilty of murder in the second degree, the intentional act that resulted in the killing must have been done with a base, antisocial motive" (Exh. J, Vol. II at 376).

Instead, the court gave an unmodified  CALJIC 2.51 instruction:

> In the crimes charged in counts one and two, namely murder, there must exist a union or joint operation, of act or conduct and a certain mental state in the minds of a perpetrator.  Unless this mental state exists, the crime to which it relates is not committed.  The mental state required is included in the definition of the crime set forth elsewhere in these instructions.

(Exh. K at 2009).  The trial court defined the required mental state thus:

> What is malice aforethought?  Malice may be either expressed or implied, and in this case, we are dealing with implied malice, not expressed malice.  Malice is implied when the killing resulted from an intentional act, the natural consequences of the act are dangerous to human life, and the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.
> When the killing is the direct result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being.  When it is shown that a killing resulted from the intentional doing of an act with implied malice, no other mental state need be shown to establish the mental state of malice aforethought.

**United States District Court**
For the Northern District of California

(*Id.* at 2010).

Petitioner's argument in support of adding "base, antisocial motive" to the instruction was based on *People v Dellinger*, 49 Cal. 3d 1212 (1989) (Exh. J, Vol. II at 376-81).  A former version of CALJIC 8.11 had two alternative definitions of implied malice: "[m]alice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life or when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." *Id.* at 1217.  Although the *Dellinger* court held that it was not error to give the version of CALJIC 8.11 with the alternative definitions, it also held that "by contemporary standards, the 'wanton disregard for human life' standard has become a superfluous charge," referencing two prior decisions, and advised trial courts not to give the first part of former CALJIC 8.11, the part that included "a base, antisocial purpose and with a wanton disregard for human life." *Id.* at 1218-19.

The language that petitioner asked the court to add to to CALJIC 2.51 was a portion of the first part of the former CALJIC 8.11 discussed in *Dellinger*.  There the court held that the two definitions were duplicative. *Id.* at 1219 (citing *People v. Watson*, 30 Cal. 3d 290 (1981) (the court in *Watson* "made it abundantly clear that the two definitions of implied malice which evolved in the aforementioned cases articulated one and the same standard.").  Since the trial court here gave the second of the two definitions that were at issue in *Dellinger*, and those definitions have been held to be duplicative as a matter of California law, raising this issue on appeal would not have been successful.  Appellate counsel therefore was not incompetent and did not prejudice petitioner by failing to raise this issue.

### b.    Definition of "Disregard"

Petitioner claims appellate counsel should have raised as an issue on appeal the trial court's failure to define "disregard" in its instructions on implied malice.  He had asked that the trial court instruct the jury that "[t]he noun 'disregard' in the definition of Second Degree Murder is defined as describing the circumstance where a lack of attention is 'intentional' or 'willful'" (Exh. J at 386).

United States District Court

For the Northern District of California

He argues that without further definition of the term "disregard," the instruction did not convey the message that there must be "*mens rea* on the part of the petitioner," *i.e.*, "the wilfulness of the inattention" which distinguishes reckless or negligent driving from "the sort of malicious act required for murder" (Pet. at 41-42).

Petitioner appears to confuse the elements required to prove second degree murder with those required to prove a first degree murder charge. "Second degree murder is defined as the unlawful killing of a human being *with malice aforethought,* but without the additional elements-- i.e., willfulness, premeditation, and deliberation--that would support a conviction of first degree murder." *People v. Nieto Benitez,* 4 Cal. 4th 91 (1992). "The mental state comprising malice is independent of that encompassed within the "wilful, deliberate, and premeditated" concepts that are elements of first degree murder." *People v. Sedeno,* 10 Cal.3d 703, 722 (1974), *overruled on other grounds by People v. Flannel,* 25 Cal.3d 668, 684, fn. 12 (1979). In order to convict on a second degree murder charge, the jury is not required to find willfulness but instead that "the killing was proximately caused  by 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'" *Id.*

In his proposed instruction petitioner again relied on *People v. Dellinger*. In the course of deciding another point in *Dellinger* the California Supreme Court referred to the dictionary definition of "disregard" that petitioner's counsel incorporated in the proposed instruction (Exh. J. at 386-87). *See Dellinger*, 49 Cal. 3d at 1219. The *Dellinger* court did not hold that there was a need to define the term "disregard," however, but was explaining that the phrase of which it was a part necessarily encompassed the concept of intent and willfulness, and that a reasonable juror would understand it. *Id.* at 1219-20. *Dellinger* does not support petitioner's position.

Given that a definition of "disregard" is not required by California law, raising this issue on appeal would have been futile. Appellate counsel was not ineffective in failing to raise it.

### c.    Danger to an Actual Person

Petitioner claims appellate counsel should have argued that the court erred in refusing a proffered instruction  requiring the jury to find he was aware of the danger to an actual person or

United States District Court

For the Northern District of California

persons at the time the dangerous act was committed.  He contends that it was important to inform

the jury that to convict him of murder, they would have to find that he knew his conduct endangered

the life of another person, not just that the act was dangerous in the abstract.

Defendant relies on *People v. Nieto Benetiz* to support his contention.  In its discussion of the

difference between a felony-murder and a second degree murder charge, the court laid out the

elements of implied malice:

> The concept of implied malice has both a physical and a mental component.
> ( *People v. Patterson, supra, 49 Cal.3d at p. 626.*) The physical component is
> satisfied by the performance of " 'an act, the natural consequences of which
> are dangerous to life.' " (*Ibid.,* quoting *People v. Watson, supra, 30 Cal.3d at
> p. 300.*) The mental component, as set forth earlier, involves an act
> " 'deliberately performed  by a  person who knows that his conduct endangers
> the life of another and who acts with conscious disregard for life. . . .' "
> (*People v. Dellinger*, *supra*, 49 Cal. 3d at ¶. 1218-1219).  Whether a
> defendant's underlying acts are inherently dangerous *in the abstract* is not
> dispositive in the jury's determination as to whether a defendant acted with
> malice.

4 Cal. 4th 91, 106-07 (1992).  The instruction given by the trial court mirrors this language:

"Malice is implied when the killing resulted from an intentional act, the natural

consequences of the act are dangerous to human life, and the act was deliberately performed

with knowledge of the danger to and with conscious disregard for human life."

Petitioner's proposed addition to this statement – that defendant was aware of the

danger to an actual person or persons at the time such an act was committed – does not

correctly state the law.  In  *People v. Albright,* 173 Cal. App. 3d 883 (1985), the court of

appeal discussed the test for implied malice established in *People v. Watson,* 30 Cal. 3d 290

(1981) and stated: "[n]owhere in its opinion did the *Watson* court suggest implied malice

requires awareness of life-threatening risk to a particular person. Instead, implied malice may

be found under *Watson,* whenever, *inter alia*, the facts establish a defendant's awareness and

conscious disregard that his conduct poses a high probability of death to *some* person.

([*People v. Watson,*] 30 Cal. 3d [290][,] 296, 299-301 [1981].) "  *Albright*, 173 Cal. App. 3d

at 887.

On the other hand, the court of appeal has found that evidence like that presented in

this case – of a defendant's prior conviction for driving while intoxicated and his limited

7

participation in drinking driver programs – was relevant to prove the knowledge element of implied malice.  *People v. Garcia*, 41 Cal. App. 4th 1832, 1849 (1995).  Appellate counsel was wise to leave this issue out of his appellate brief.

### d.   "High Probability"

Petitioner asserts that appellate counsel should have raised as error on appeal the trial court's refusal to add to the "natural consequences" element of implied malice, the phrase "or, phrased in a different way, there was a high probability that the act would result in death."  Again, the California Supreme Court's disapproval of this alternative form of the instruction in *Dellinger*, discussed in section "a" above, shows that raising this issue on appeal would have been futile.

### 2.   PRETRIAL MOTION TO DISMISS

Petitioner also contends that appellate counsel was ineffective in not raising as an issue on appeal the trial court's denial of a pretrial motion to dismiss the information.  Under California law denial of a pretrial motion to set aside an information cannot be the basis for reversal on appeal after conviction unless the error somehow resulted in an unfair trial or other prejudice.  *See People v. Pompa-Ortiz*, 27 Cal. 3d 519, 529 (1980).  Petitioner fails to even allege, much less show, prejudice from denial of the motion.  Raising this issue on appeal therefore would have been futile, and counsel was not ineffective in failing to do so.

### CONCLUSION

Because appellate counsel was not ineffective, the rejections of these issues by the California courts were not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.  The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April ___13___, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\ORTIZ834.RUL2.wpd